UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GEORGE J. MAZZA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 18-320 |
| ) | |
| GEORGETOWN UNIVERSITY, ) | |
| ) | FILED UNDER SEAL |
| Defendant. ) | |

## MEMORANDUM OPINION

George Mazza, a current U.S. Department of Justice lawyer, twice applied to a Ph.D. program within the Georgetown University Graduate School of Arts and Sciences' Department of Theology. Citing issues with certain aspects of his applications, Georgetown rejected him both times. But Mazza contends that Georgetown's stated reasons are mere pretext for discriminating against him based on his age. As such, Mazza brought this action under the Age Discrimination Act ("ADA"), 42 U.S.C. § 6102, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.41, seeking monetary damages, equitable relief, and declaratory relief.

Before the Court is Georgetown's motion in limine to exclude evidence of an alleged ex parte communication between Mazza and an admissions committee member in violation of D.C. Rule of Professional Conduct 4.2. The Court will grant the motion in limine because the inclusion of this improperly obtained evidence would be unfair to Georgetown either at this stage or at trial.

Also before the Court is Georgetown's motion for summary judgment against Mazza's age discrimination claims. The Court will deny the motion for summary judgment because Mazza has presented enough circumstantial evidence to raise triable issues of fact with respect to pretext.

1

## Background

Mazza first applied to Georgetown's Department of Theology for September 2017 admission when he was sixty-one-years-old. Pl.'s First Am. Compl. ¶ 6, ECF No. 7. Mazza's application included a CV, thesis project proposal, transcript, writing sample, and letters of recommendation. Def.'s Mot. Summ. J. Exs. 1, 12, 14–18, ECF Nos. 19-4, 19-15, 19-17–19-21. His thesis project proposal involved studying the relationship between Christianity and Judaism. Def.'s Mot. Summ. J. Ex. 12. Additionally, Mazza had five degrees and decades of work experience when he applied. Def.'s Mot. Summ. J. Ex. 1.

The September 2017 admissions committee consisted of eleven members, including Professors Jonathan Ray and Peter Phan.[1] Def.'s Mot. Summ. J. Ex. 21, ECF No. 19-24. Each member looked through all forty applications and chose his or her top four applicants. *Id.* The committee would extend offers to only four of those top applicants and place four more on a waitlist. Def.'s Mot. Summ. J. 1–2, ECF No. 21. Mazza was not in anyone's list of top-four applicants. Ray Dep. 78:2–79:2, ECF No. 19-22. After discussing everyone's top-four applicants, the committee discussed the remaining applicants, including Mazza. Def.'s Mot. Summ. J. Ex. 21.

Despite some members advocating for Mazza, other members pointed to his thesis project proposal (and lack of a thesis advisor in his area of interest), writing sample, letters of recommendation, and extended time away from academia as areas of concern. Ray Dep. 41:2–18; 50:20–51:21; 143:5–144:10; 148:3–149:2. Some members also expressed concern with Mazza's graduate school grades and inability to speak Hebrew, as well as the difficulties he might face in

---

[1] Georgetown's motion for summary judgment states that the admissions committee consisted of twelve members. Def.'s Mot. Summ. J. 10, ECF No. 21. Whether the committee consisted of eleven or twelve members had no impact on the Court's decision.

attempting to secure a tenure-track professor position at this stage of his career. Lefebure Dep. 49:17–19, ECF No. 19-12; Phan Dep. 85:5–10, ECF No. 19-16; Ray Dep. 109:1–110:2.

Georgetown rejected Mazza's application for September 2017 admission. Def.'s Mot. Summ. J. 2. Almost two months later, Mazza filed an administrative complaint with the U.S. Department of Education's Office for Civil Rights ("OCR") alleging age discrimination. *Id.* at 2–3. A week after filing his complaint, Mazza, representing himself in the OCR complaint at the time, met with Phan. *Id.* at 15. Mazza did not advise Phan of the OCR complaint and did not forewarn Georgetown's counsel of the meeting. Mazza Dep. 115:20–116:17, ECF No. 26-43. During their conversation, Phan revealed to Mazza what he believed to be the reasons behind the committee's decision, among other insights. *Id.* at 109:7–112:8. Georgetown alleges that this conversation qualifies as a prohibited ex parte communication under D.C. Rule of Professional Conduct 4.2 and asks the Court in its motion in limine to exclude all evidence related to the conversation. Def.'s Mot. Exclude Evid. 4, ECF No. 20.

Mazza went on to apply to the same program for September 2018 admission, but Georgetown rejected him again. Pl.'s First Am. Compl. ¶ 15. Upon his lawyer's advice, Mazza submitted the same application materials for September 2018 admission. Def.'s Mot. Summ. J. 17. The September 2018 application pool consisted of sixty applicants and Georgetown admitted six of them. *Id.* at 18.

Professor Terrence Johnson, the September 2018 admissions chair, evenly distributed the applications to a six-member admissions committee and instructed them to assign a letter grade to each applicant. Def.'s Mot. Summ. J. Ex. 34, ECF No. 19-37. The members placed applicants with two grades of A- or higher in the top-tier group. Johnson Dep. 40:10–12, ECF No. 19-36. Mazza ended up in the second-tier group, placing him behind the fifteen top-tier applicants. Def.'s

Mot. Summ. J. Ex. 37, ECF No. 19-40. Again, the committee was especially concerned about Mazza's writing sample, letters of recommendation, and potential lack of a thesis advisor. *Id.*

Mazza argues that he was more qualified than the admitted applicants and attributes his rejection to age discrimination. Pl.'s Opp. Def.'s Mot. Summ. J. 1–5, ECF No. 28. For its part, Georgetown denies any wrongdoing and maintains that the committees rejected Mazza for legitimate, non-discriminatory reasons. Def.'s Mot. Summ. J. 23. Mazza seeks the payment of benefits and stipends that he would have received if granted admission, compensatory damages under the DCHRA, attorney's fees, and prejudgment interest, as well as declaratory and injunctive relief. Pl.'s First Am. Compl. 7–8.

## Motion in Limine

Before considering Georgetown's motion for summary judgment, the Court turns to Georgetown's motion in limine to exclude all evidence derived from the alleged ex parte communication between Phan and Mazza. Courts possess the inherent power to exclude evidence, and that power derives from their prerogative to "protect their integrity and prevent abuses of the judicial process." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1475–76 (D.C. Cir. 1995). The Court may exclude evidence "whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue." *Id.* at 1478. However, "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express v. Piper*, 447 U.S. 752, 764 (1980).

D.C. Rule of Professional Conduct 4.2 states, in relevant part:

(a) During the course of representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a person known to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the lawyer representing such other person or is authorized by law or a court to do so.

4

> (b) During the course of representing a client, a lawyer may communicate about the subject of the representation with a nonparty employee of an organization without obtaining the consent of that organization's lawyer. If the organization is an adverse party, however, prior to communicating with any such nonparty employee, a lawyer must disclose to such employee both the lawyer's identity and the fact that the lawyer represents a party that is adverse to the employee's employer.

Rule 4.2 is "primarily focused on protecting represented persons unschooled in the law from direct communications from counsel for an adverse person." D.C. Rules of Prof'l Conduct r. 4.2 cmt. 5 (2019). The D.C. Bar has interpreted Rule 4.2(a) to apply to attorneys representing themselves. D.C. Bar Ethics Op. 258 (1995). Thus, Mazza—representing himself in his OCR complaint against Georgetown at the time of the conversation—was subject to Rule 4.2(a).

Mazza effectively admitted to all the elements of a restricted ex parte communication in his deposition. He admitted to being a member of the D.C. Bar; to being aware of his ethical obligations as a D.C. attorney; to understanding that he filed his OCR complaint against Georgetown before meeting with Phan; to understanding that Phan was an employee of Georgetown who exercised administrative responsibilities as a member of the admissions committee; to discussing Phan's exercise of those responsibilities during their meeting; to representing himself in his OCR complaint; to knowing—before meeting with Phan—that Georgetown was represented by counsel; to failing to request from Georgetown or its counsel to meet with Phan; and to failing to tell Phan that he had filed the OCR complaint. Mazza Dep. 106:15–112:8; 114:15–117:15.

Mazza's arguments opposing Georgetown's motion in limine are devoid of any legal basis. He first argues that he was not acting as his own lawyer when he met with Phan and that Phan initiated the discussion of the committee's deliberations. Neither Rule 4.2 nor Ethics Opinion 258 carve out exceptions for this situation: a lawyer who represents himself cannot pretend to be a non-lawyer during convenient circumstances and engage in communications about the subject matter

5

of the representation—even if those communications were initiated by the represented individual. When asked why he did not stop Phan from speaking about the subject matter of the OCR complaint, Mazza said that he did not believe he had an obligation to do so because it was an administrative complaint, not litigation. Mazza Dep. 117:8–15. But according to D.C. Rule of Professional Conduct 1.0(h), a "matter" within the context of the rules includes administrative proceedings. D.C. Rules of Prof'l Conduct r. 1.0(h) (2019). Whether Mazza understood this at the time of the meeting does not affect the Court's misconduct determination. *See Faison v. Thornton*, 863 F. Supp. 1204, 1214 (D. Nev. 1992) ("Negligence, ignorance, or lack of intent do not excuse [an ex parte communication].").

Mazza next argues that Rule 4.2(b) authorized his communications with Phan, a nonparty employee of Georgetown. Georgetown's status as an adverse party in Mazza's OCR complaint required him to "disclose to [Phan] both [Mazza]'s identity and the fact that [Mazza] *represents a party* that is adverse to [Georgetown]" if he wanted to communicate with Phan about the committee's decision-making process. D.C. Rules of Prof'l Conduct r. 4.2(b) (2019) (emphasis added). Mazza claims that the required disclosures were self-evident because "Mazza and Phan knew each other and had met before, and Phan supported Mazza's application for admission." Pl.'s Opp. Def.'s Mot. Exclude Evid. 6, ECF No. 25. Additionally, Mazza suggests that "[i]f adversity here is Mazza's opposition to Georgetown's decision not to admit him to the Ph.D. program, Phan knew that, too, because Phan was eager to discuss that with Mazza." *Id.* Requiring any further disclosures, according to Mazza, would lead to "absurd results." *Id.*

Mazza's reading of Rule 4.2(b) plainly contradicts the rule's text and purpose, assuming it even applies to lawyers representing themselves.[2] The rule clearly required Mazza to disclose his identity as a lawyer representing himself as a party adverse to Georgetown in his OCR complaint. But Mazza did no such thing. Furthermore, Rule 4.2 was intended to protect individuals like Phan who are unschooled in the law and who may unknowingly divulge potentially prejudicial information to an adverse party. *See* D.C. Rules of Prof'l Conduct r. 4.2 cmt. 5 (2019). Phan was not only unschooled in the law, but he also had no knowledge of Mazza's pending OCR complaint. Although Phan initiated the conversation, perhaps he would not have been so willing to divulge information about the committee's decision-making process had Mazza fully apprised him of the circumstances. As such, Mazza's Rule 4.2(b) argument can easily be dismissed.

Mazza's final two arguments also have no merit. He claims that the substance of his conversation with Phan is consistent with the testimonies of other witnesses, so the Court should not exclude it. Rule 4.2 carves out no such exception. Additionally, he claims that the exclusion of all evidence related to his conversation with Dr. Phan—including all deposition testimony discussing it—would be inappropriate, but the Court sees it differently. It is well within the Court's authority to exclude any evidence, including deposition testimony, that exists because of an ex parte communication, and Mazza should not be permitted to benefit from his actions.

Mazza's conduct was, at the very least, troublesome. At most, Mazza willfully took advantage of Phan's lack of knowledge of both the law and Mazza's pending OCR complaint to extract additional information to prove his claim.[3] The Court takes no position concerning

---

[2] Ethics Opinion 258 dealt specifically with Rule 4.2(a). If the reasoning behind Ethics Opinion 258 should extend to Rule 4.2(b) as well, Mazza finds no support in it for his arguments. If anything, considering Rule 4.2(b) weighs in favor of excluding all evidence derived from the conversation.

[3] He submitted the notes he took from the meeting as evidence to the OCR while it considered his complaint. Def.'s Mot. Exclude Evid. Ex. 6, ECF No. 20-6.

Mazza's true motive, but it will exclude the evidence nonetheless. *See Faison*, 863 F. Supp. at 1214. The Court does not take lightly its responsibility to exercise restraint when invoking its inherent power to exclude evidence. *See Roadway Express*, 447 U.S. at 764. But the inclusion of this improperly obtained evidence would be unfair to Georgetown either at this stage or at trial. Accordingly, the Court will grant Georgetown's motion in limine.

## Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All evidence must be viewed "in the light most favorable to the nonmoving party" and, if a genuine dispute exists, "parties should be given the opportunity to present direct evidence and cross-examine the evidence of their opponents in an adversarial setting." *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). In assessing whether any genuine factual issues exist, a court must "draw all reasonable inferences in favor of the nonmoving party" without "mak[ing] credibility determinations or weigh[ing] the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Summary judgment is "appropriate only in circumstances where 'the evidence is such that a reasonable jury could not return a verdict for the nonmoving party.'" *Washington Post Co.*, 865 F.2d at 325 (D.C. Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The ADA prohibits discrimination on the basis of age in programs or activities receiving federal financial assistance.[4] 42 U.S.C. § 6102. However, the ADA does not prohibit actions that would otherwise violate Section 6102 if "the differentiation made by such action[s] is based upon reasonable factors other than age." § 6103(b)(1)(B). Similarly, the DCHRA prohibits denials and

---

[4] "Program or activity" encompasses actions taken by a college or university. 42 U.S.C. § 6107(4)(B)(i).

restrictions of programs and their benefits to an otherwise qualified individual based upon the actual or perceived age of the individual. D.C. Code § 2-1402.41. Georgetown proposes that the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), should control the ADA and DCHRA analysis, and the Court agrees.

Few courts have considered the question of how to analyze ADA claims. At least two courts have held that the ADA should be analyzed under the existing Title VII burden-shifting framework. *See Stoner v. Young Concert Artists, Inc.*, No. 11 Civ. 7279 (LAP), 2012 U.S. Dist. LEXIS 141892, at *14 (S.D.N.Y. Sept. 25, 2012), *aff'd in part, vacated in part on other grounds*, 626 Fed. App'x 293 (2d Cir. Sept. 21, 2015); *Harris v. Members of the Bd. of Governors of Wayne State Univ.*, No. 10-11384, 2011 U.S. Dist. LEXIS 96010, at *11 (E.D. Mich. Aug. 26, 2011). Of those two opinions, *Harris* explicitly mentions the *McDonnell Douglas* framework as the proper mode of analysis when there is no direct evidence of discriminatory intent.[5] *Harris*, 2011 U.S. Dist. LEXIS 96010, at *11.

Moreover, the D.C. Circuit has already applied the *McDonnell Douglas* framework to the Age Discrimination in Employment Act ("ADEA"). *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077–78 (D.C. Cir. 1999). Both the ADEA and the ADA seek to prevent age discrimination, albeit within different contexts, and the ADEA also permits "differentiation . . . based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). Additionally, Congress passed the ADEA and the ADA to deter prejudicial actions motivated by unsupported, age-related stereotypes. *See EEOC v. Wyoming*, 460 U.S. 226, 231 (1983); *Action Alliance of Senior Citizens v. Sullivan*, 930 F.2d

---

[5] Direct evidence of discriminatory intent alone would move Mazza's claim past summary judgment. *See Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) (stating that direct evidence of discrimination "generally entitle[s] a plaintiff to a jury trial").

9

77, 82 (D.C. Cir. 1991). Because the two acts share similar language and purpose, the Court sees no reason why it should not apply *McDonnell Douglas* and its progeny to the ADA as well.[6]

Mazza's first hurdle in the *McDonnell Douglas* framework is to establish a prima facie case of age discrimination. *See Hall*, 175 F.3d at 1077. To do so in the university admissions context, he must prove that "he belongs in the statutorily protected age group, he was qualified for [admission], he was [denied admission], and he was disadvantaged in favor of a younger [applicant]." *Id.* Mazza has presented ample evidence that he was sixty-one-years-old when he first applied, he was qualified for admission, he was twice denied admission, and he was passed over for applicants who were younger than him. As such, Mazza has met his initial prima facie burden.

The burden then shifts to Georgetown to provide a "legitimate, nondiscriminatory reason" for Mazza's denial. *McDonnell Douglas Corp.*, 411 U.S. at 802. Georgetown raised several legitimate, nondiscriminatory reasons for Mazza's denial: the duration of time since he performed scholarly research and writing assignments, the significant obstacles he would face in securing a tenure-track position at a university after graduation, the potential lack of a thesis advisor in his area of interest, his non-scholarly letters of recommendation and writing sample, his master's degree grades, and his inability to speak Hebrew. Although some of these reasons correlate with age, they are, on their face, legitimate concerns for an admissions committee to have, and Mazza provides no direct evidence of animus.[7] As such, Georgetown has met its burden.

---

[6] The D.C. Circuit has already accepted that the *McDonnell Douglas* framework applies to the DCHRA, so the analysis for both of Mazza's claims will be the same. *See,* e.g., *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010).

[7] Mazza argues that Ray's deposition testimony provides direct evidence of age discrimination. Pl.'s Opp. Def.'s Mot. Summ. J. 17. The Court disagrees. As Georgetown notes, Mazza omitted a portion of Ray's testimony that clarified what he meant when he testified that Mazza's age came up in the committee's discussions. Def.'s Reply Supp. Mot. Summ. J. 5, ECF No. 31. The real issue was not Mazza'a age, but rather the amount of time that he had been away from academia. *Id.* at 6. Although this issue correlates with age, it is, on its face, a legitimate concern for an admissions committee to have. Accordingly, Mazza has not presented any direct evidence of age discrimination.

The burden then shifts back to the Mazza to demonstrate that Georgetown's reasons for denying him are mere pretext for discrimination. *See Hall*, 175 F.3d at 1078. Mazza argues that his allegedly superior qualifications raise the issue of pretext.[8] Pl.'s Opp. Def.'s Mot. Summ. J. 18. The issue of qualifications can create an inference of pretext so long as the rejected applicant is significantly more qualified than an admitted applicant. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998).

The Court further notes that some of Georgetown's reasons for denying Mazza, although facially neutral, correlate with age. Georgetown argues that caselaw governing the ADEA, specifically *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), disposes of that concern.[9] In *Hazen Paper Co.*, an employer fired its sixty-two-year-old employee a few weeks before his pension benefits were set to vest. 507 U.S. at 607. The pension plan had a ten-year vesting period and was not based on the employee reaching a certain age. *Id.* at 607, 613. The Supreme Court held that a decision based on a factor that correlates with age is "not *necessarily* 'age based'" because "age and years of service are analytically distinct." 507 U.S. at 611 (emphasis added). The employer could "take account of one while ignoring the other." *Id.* The Supreme Court also clarified that it did not "consider the special case where an employee is about to vest in pension benefits as a result of his *age*, rather than years of service." *Id.* at 613 (emphasis in original). So, a factor that

---

[8] Mazza also alleges that the almost five-year gap in age averages of admitted/waitlisted applicants and rejected applicants should factor into the pretext analysis, but he cites no authority supporting this assertion. Pl.'s Opp. Def.'s Mot. Summ. J. 6. Such statistics are "essentially irrelevant" and "provide[] no assistance to the Court." *See Spaeth v. Georgetown Univ.*, 943 F. Supp. 2d 198, 216 (D.D.C. 2013) (analyzing similar statistical age averages within the ADEA context).

[9] Georgetown invokes *Hazen Paper Co.* to demonstrate why there is no direct evidence of age discrimination. Def.'s Mot. Summ. J. 28. The Court agrees that there is no direct evidence of age discrimination, but because several admissions criteria correlate with age, the Court must examine whether the committees' consideration of those criteria provides circumstantial evidence of pretext.

11

correlates with age, such as pension status, may be analytically distinct from age, but the extent to which they are distinct depends on the facts of each case.

In light of *Aka* and *Hazen Paper Co.*, the Court must determine whether Mazza raises any triable issues of fact with respect to pretext. In doing so, the Court must view all evidence "in the light most favorable" to Mazza and make all reasonable inferences in his favor. *Reeves* 530 U.S. at 150; *Washington Post Co.*, 865 F.2d at 325. The Court concludes that the factual record, when construed in the light most favorable to Mazza, contains enough circumstantial evidence to raise triable issues of fact with respect to pretext and thus entitles Mazza to a jury trial.

## Conclusion

Although the Court will grant Georgetown's motion in limine, Mazza has presented enough circumstantial evidence to raise triable issues of fact with respect to pretext. Accordingly, the Court will deny Georgetown's motion for summary judgment. A separate order follows.

Date: August 15, 2019

*Royce C. Lamberth*
Royce C. Lamberth
United States District Judge